**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

IOWA BUILDERS RETIREMENT
PLAN, by its Trustees,

   Plaintiff,

vs.

FARMER MASONRY, INC.,

   Defendant.

No. 05-CV-197-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.* *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.* *BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.* *THE MERITS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
  *A.* *Unpaid Contributions* . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
  *B.* *Interest on Unpaid Contributions* . . . . . . . . . . . . . . . . . . . . *12*
  *C.* *Liquidated Damages* . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*
  *D.* *Attorney Fees & Costs* . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
   *1.* *Attorney Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
   *2.* *Costs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*
  *E.* *Audit Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

*IV.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

## *I. INTRODUCTION*

Before the court is Plaintiff's Application for Default Judgment ("Application") (docket no. 6).

## II. BACKGROUND

On December 21, 2005, Plaintiff Iowa Builders Retirement Plan filed a Complaint against Defendant Farmer Masonry, Inc. Plaintiff alleged Defendant failed to make payments to Plaintiff pursuant the terms of a collective bargaining agreement, in violation of 29 U.S.C. § 1145.

On December 27, 2005, Plaintiff served Defendant by serving the Summons and Complaint upon Mr. Dwayne Farmer, Defendant's Owner.[1] Defendant never filed an answer to the Complaint.

On March 22, 2006, Plaintiff filed the instant Application. Plaintiff requests that default judgment be entered against Defendant. Plaintiff seeks damages in the amount of $5,014.50 for delinquent contributions to the Iowa Builders Retirement Plan, $3,368.67 in liquidated damages, $892.50 for attorney fees, $273.84 for costs, $260.00 for audit fees and interest as provided by law.

Plaintiff attached the affidavit of Lisa Rosteck to its Application. In her affidavit, Rosteck testifies:

> 1. I am the Client Service Consultant of the Wells Fargo Bank handling the Iowa Builders Retirement Account.
> 2. Defendant failed to make the retirement contribution in the amount of $5,014.15.[2]
> 3. The agreement and declaration of trust of the Iowa Builders Retirement [A]ccount provides for a 5% per month liquidated damage on the outstanding balance.

---

[1] The Return of Service does not list where Defendant was served. On April 27, 2006, Plaintiff informed the court in an affidavit that Mr. Farmer was served at 3543 Third Avenue, Marion, Iowa.

[2] The court notes that this amount is inconsistent with the amount referenced in the Application.

      4.    Through February 28, 2006 liquidated damages are $3,368.67.
      5.    The agreement and declaration of trust of the Iowa Builders Retirement [A]ccount provided for the payment of attorney fees.

Ms. Rosteck's affidavit was the only evidence Plaintiff submitted in support of its Application.

On March 23, 2006, the Clerk of Court entered the default of Defendant for failing to file a timely answer. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."); *see also* Fed. R. Civ. P. 7(a) (requiring a defendant to file an answer). The Clerk of Court construed Plaintiff's Application as requesting an entry of default, because entry of default must precede default judgment. *See* Fed. R. Civ. P. 55; *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004).

The court scheduled an April 20, 2006 hearing ("Hearing") on Plaintiff's Application. The court reserved ruling on Plaintiff's Application until the completion of the Hearing. In the scheduling order, the court noted that Plaintiff was required to prove its damages. Fed. R. Civ. P. 55(b)(2); *see, e.g., Oberstar v. FDIC*, 987 F.2d 494, 505 (8th Cir. 1993) ("[I]n civil litigation between private parties, a party entitled to judgment by default is required to prove the amount of damages that should be awarded."). Absent a Hearing, the court noted that Plaintiff's damages could not be ascertained with any reasonable certainty. Plaintiff had not provided the court with sufficient legal or factual support to establish its damages.

On April 20, 2006, the court held the Hearing. Attorney Corey Lorenzen represented Plaintiff. Defendant did not appear.

At the Hearing, Plaintiff submitted a Memorandum in Support of Damages for Default Judgment ("Memorandum"). Plaintiff indicated that it now requests $8,801.00 in damages, $1,695.00 in attorney fees, $326.63 for expenses, $260.00 for audit fees and interest as provided by law. Plaintiff claims it is entitled to liquidated damages in the amount of 5% per month, thus explaining the sharp rise in Plaintiff's alleged damages since March of 2006.

To prove its damages, Plaintiff attached five exhibits to its Memorandum. Plaintiff also introduced these five exhibits into evidence at the Hearing.

Exhibit A is a "Summary of Deficiency" for "Farmer Masonry Bricklayers 2004." It is unclear who prepared Exhibit A or when they prepared it. Exhibit A appears to show that "Farmer Masonry Bricklayers" owed someone $24,384.36 for a total of 2,639 hours expended by fourteen people during the months of November and December of 2004. The Summary of Deficiency references a contribution rate of 1.7 to "IA Builders."

Exhibit B is a document entitled International Trowel Trades Fringe Benefit Fund. It is signed by "D. Farmer" on February 10, 2005. Exhibit B is nearly illegible. Exhibit B appears to show that George W. Dean, III and Dustin D. Graves worked 144.5 hours and 166 hours, respectively, in January of 2005 for Defendant.

Exhibit C is entitled "Farmer Masonry, Inc., Delinquent Hours For November 2004, December 2004, and January 2005, Iowa Builders Retirement Plan." It is unclear who prepared Exhibit C or when they prepared it. Exhibit C states that Defendant was delinquent for 1598 hours in November of 2004, 1,041 hours in December of 2004 and 310.5 hours in January of 2005. Exhibit C establishes a "contribution rate" of 1.7 for each delinquent hour. This results in a "contribution due" of $2,716.60 for November of 2004, $1,769.70 for December of 2004 and $527.85 for January of 2005. Exhibit C then proceeds to assess a 5% per month penalty on the "contribution due," resulting in a total

4

amount due of $3,368.67. Exhibit C also indicates "audit charges" of $260.00 are due, resulting in a grand total amount due (as of February 28, 2006) of $3,628.67.

Exhibit D is a bill to Plaintiff's law firm from Employee Fringes Audit Company in the amount of $560.00 for audit fees for "Dwayne Farmer Masonry" and "D&R Masonry." Each audit cost $280.00.

Exhibit E is an itemized printout of attorney fees and costs expended by Plaintiff's law firm on this case. Exhibit E purports to show that Plaintiff's law firm expended $1,695.00 in attorneys fees and $326.63 in costs.

On May 1, 2006, the court issued an Order on the Application in which it again reserved ruling on the Application. The court held that it could not grant Plaintiff's Application because Plaintiff's damages could not be ascertained with any certainty. The court required Plaintiff to produce all contracts that served as the basis of its claim for damages.

On May 4, 2006, Plaintiff filed four documents with the court. Plaintiff avers that these "documents are the basis for the Plaintiff's claim."

The first document is entitled "Agreement and Declaration to Amend the Iowa Builders' Retirement Plan (Reinstated Effective as of July 1, 1997)" ("Plan") (*See* docket no. 16-2). The Plan is sixty-nine pages in length. Defendant does not appear anywhere in the Plan. The Plan was signed on January 11, 2002, by Susuan M. Kartman, Chairperson, and Clayton E. Phillips, Secretary, for the "Executive Board (on behalf of the Employers and Unions)," and by Rhonda R. McCombs as "Wells Fargo Bank Iowa, N.A., Trustee."

Pursuant to Article I of the Plan, "Employer" is defined as

> any employer who now or hereafter has a duly executed Collective Bargaining Agreement which requires contribution to this Plan with any of the Unions who are or who later

5

> become a party to this Plan, or who signs a standard Acceptance of Agreement form satisfactory to the Trust, and those contractors making one contribution to the Plan and agreeing to be bound by the terms of this Plan and any amendments and modifications hereto.

(docket no. 16-2 at 1.01). "Unions" is defined as "those Unions who have executed a collective bargaining agreement with an Employer, which provides for payment of contributions to this Plan, and which have been accepted by the Executive Board." (*Id.* at 1.02). Section 3.01 of the Plan states that an Employer "agrees to be liable for all expenses in connection [with a suit filed for the collection of contributions], including a reasonable attorney's fee for the attorneys for the Executive Board." (*Id.* at 3.01).[3]

The second document Plaintiff filed with the court is entitled "The Iowa Builders Retirement Plan Amendment of the Plan for EGTRRA" ("Amendment"). The Amendment was signed on June 2, 2003 by the same three individuals who signed the Plan. The Amendment states that it "is adopted to reflect certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001 (EGTRRA)." (docket no. 16-3 at ¶1). The Amendment appears to change various parts of the Plan unrelated to the calculation of damages in this case.

The third document is an unsigned letter on Plaintiff's letterhead ("Letter"), dated January 22, 2001, from "President Carl Schuler" to "Iowa Builders Retirement Plan Contributors." (docket no. 16-4) In part, the Letter states:

> The purpose of this letter is to keep you advised concerning the position of the Board of Trustees of the Iowa Builders Retirement Plan relating to delinquent contributions and the

---

[3] In direct contradiction to Ms. Rostock's affidavit, the court cannot find anything in the terms of the Plan that requires an Employer to pay 5% per month in liquidated damages on outstanding balances.

> assessment of penalties. The Plan Documents require that all contributions to the Plan shall be due on the 15th day of the month following the month in which the contributions were earned. There has apparently been some confusion among contributors as to when the Trustee of the Plan should actually receive the contributions and when the payments will be considered to be delinquent.
>
> At its most recent meeting, the Board of Trustees confirmed that all contributions are due on the 15th of the month, but recognizing the difference in mail delivery and accounting practices, the penalty for delinquent contributions (which is 5% per month) will be assessed against contributors from whom contributions are received by the Trustee after the last day of the month in which they are due.

(*Id.* at ¶¶1-2)

The fourth document is entitled "Iowa Builders Retirement Plan Employer Compliance Questionnaire" ("Questionnaire"). (docket no. 16-5). It was signed by the "V.P. of Farmer Masonry, Inc." on October 5, 1999.[4]

In the Questionnaire, Defendant's vice-president states that he has signed a collective bargaining agreement with the Bricklayers & Allied Craftworkers Local No. 3, in which the Iowa Builders Retirement Plan is named as the recipient of certain retirement fund contributions. (*Id.* at ¶6). The vice-president also indicates that a copy of the most recently signed collective bargaining agreement was provided to the Plan's trustees. (*Id.* at ¶7).

---

[4] The signature is almost completely illegible; it appears, however that the first name may begins with "Dwa." The signature is completely different from the signature of "D. Farmer" in Exhibit B.

### III. THE MERITS

Plaintiff's Complaint is founded upon 29 U.S.C. § 1145. That section of the Employee Retirement Income Security Act of 1974 ("ERISA") provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. ERISA provides a private right of action to the trustees of a plan to enforce § 1145 when an employer violates its obligations under the plan or a collective bargaining agreement. 29 U.S.C. § 1132(d)(1).

Because Defendant failed to answer Plaintiff's Complaint, Defendant's liability to Plaintiff for a violation of 28 U.S.C. § 1145 is established.[5]

> If the court determines that the defendant is in default, his liability to the plaintiff is deemed established and the plaintiff is not required to establish his right to recover. The allegations of the complaint except as to the amount of damages are taken as true.

*Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973) ((internal quotation omitted)); *see also Flynn v. Williams Masonry*, 233 F.R.D. 176, 177 (D.D.C. 2005) (finding damages where court had entered default in an ERISA case and holding that "[t]he only issue before the Court . . . is the amount of damages owed by the defendants

---

[5] The court notes that the record contains remarkably little evidence regarding Defendants' liability to Plaintiff under 28 U.S.C. § 1145. The court seriously questions why the record does not contain the collective bargaining agreements Defendant allegedly signed obligating it to make contributions to the Plan. The Defendant's responses to the Questionnaire in 1999 are apparently Plaintiff's sole evidence of liability.

to the plaintiffs") (citing *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980)). Paragraph 4 of Plaintiff's Complaint alleges that Defendant was a party to various collective bargaining agreements. Paragraph 5 alleges that Defendant was obligated to make contributions in accordance with the terms of the Plan and failed to make those contributions. These allegations are established as true for purposes of this order. *Brown*, 477 F.2d at 531.

However, the court is not required to accept the allegations of Plaintiff's Complaint regarding damages as true. *Id.* "[I]n civil litigation between private parties, a party entitled to judgment by default is required to prove the amount of damages that should be awarded." *Oberstar*, 987 F.2d at 505. Plaintiff must prove its damages by a preponderance of the evidence. *See Everyday Learning v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming district court's decision not to award damages after default judgment hearing where damages were "speculative and not proven by a fair preponderance of the evidence.")

In determining the amount of damages for a default judgment in an ERISA case brought by a retirement plan against an employer, the court "may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). The court must afford Plaintiff all reasonable inferences from the evidence offered. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Int'l Painters*, 239 F. Supp. 2d at 30.

According to Plaintiff's Memorandum, Plaintiff's damages claim is predicated upon 29 U.S.C. § 1132(g)(2). That provision of ERISA provides:

> (2) In any action under this subchapter by a fiduciary for or on

9

behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
    (i) interest on the unpaid contributions, or
    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

As the plain language of the § 1132(g)(2) makes clear, once liability under § 1145 is established, upon proper proof, the court is required to award Plaintiff damages for: (1) the unpaid contributions, (2) interest on the unpaid contributions, (3) an amount equal to the interest on the unpaid contributions or liquidated damages provided under the Plan and (4) reasonable attorney fees and the costs of the action. 29 U.S.C. § 1132(g)(2); *see United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn*, 787 F.2d 128, 134 (3d Cir. 1986) ("The language of [§1132(g)(2)] is mandatory."), *aff'd by an equally divided court*, *Pension Benefit Guar. Corp. v. United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan*, 481 U.S. 735, 735

(1987); *accord Int'l Painters*, 239 F. Supp. 2d at 31 ("When a court awards a default judgment against a defendant for contributions owed under a collective bargaining agreement, ERISA provides that the court must award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; and (4) reasonable attorney's fees and costs of the action." (Footnotes and citations omitted.)).[6] "The legislative history of these provisions explains that Congress added these strict remedies to give employers a strong incentive to honor their contractual obligations to contribute and to facilitate the collection of delinquent accounts." *Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988). The court considers each of these four categories of damages, in turn.

### A. Unpaid Contributions

According to Ms. Rosteck's affidavit, "Defendant failed to make the retirement contribution in the amount of $5,014.15." Standing alone, Ms. Rosteck's affidavit is evidence of Plaintiff's damages. Although Ms. Rosteck's affidavit does not explain the basis for her conclusion, Exhibits A, B and C appear to corroborate her claim. In the Memorandum, Plaintiff explains that it arrived at the $5,014.15 figure by multiplying the 2,949.5 employee hours for which Defendant failed to contribute to the Plan in November of 2004, December of 2004 and January of 2005, by a contribution rate of 1.70. Affording Plaintiff all reasonable inferences, *see Au Bon Pain Corp.*, 653 F.2d at 65, the court finds Plaintiff has proven that it is entitled to $5,014.15 for delinquent contributions. 29 U.S.C. § 1132(g)(2)(A).

---

[6] The court may also award other legal or equitable relief, 29 U.S.C. § 1132(g)(2), such as an injunction requiring a defendant to cooperate with an audit of its records. *See, e.g., Int'l Painters*, 239 F. Supp. 2d at 31 (citing *Mason Tenders Dist. Council Welfare Fund v. Bold Constr. Co.*, No. 01CIV0641LTSTHK, 2002 WL 1788024, at *3 (S.D.N.Y. Aug. 1, 2002)). No such additional relief is requested here.

### B. Interest on Unpaid Contributions

Interest on unpaid contributions must be determined by using a "rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Plaintiff does not point to any portion of the Plan that sets a rate for interest on unpaid contributions, and the court can find none. The court, therefore, finds Plaintiff is entitled to interest on the unpaid contributions consistent with 26 U.S.C. § 6621. 29 U.S.C. § 1132(g)(2)(B). The court finds that the total amount of prejudgment interest due in this case is $435.33.[7]

### C. Liquidated Damages

Plaintiff claims it is entitled to liquidated damages in the amount of $3,786.52. This figure is arrived at by adding 5% per month interest to the unpaid contribution amount of $5,014.15, running up to the date of the Hearing.

The court finds Plaintiff has not proven that it is entitled to liquidated damages. Section l132(g)(2)(C) permits the court to award liquidated damages only if the Plan provides for liquidated damages. Contrary to Ms. Rosteck's conclusory affidavit, the court

---

[7] Pursuant to 26 U.S.C. § 6621, the applicable rate is the federal short-term rate plus three percentage points. 26 U.S.C. § 6621(2) (setting underpayment rate). The court takes judicial notice that the applicable federal short-term rate for November of 2004 was 2.37%, for December of 2004 was 2.48% and for January of 2005 was 2.78%. *See Scalamandre v. Oxford Health Plans (N.Y.), Inc.*, 823 F. Supp. 1050, 1064 (E.D.N.Y. 1993) (stating that simple interest applies and interest is not to be compounded daily) (comparing §§ 6621 and 6622). These federal short-term rates are rounded to 2%, 2% and 3%, respectively. *See id.* § 6621(b)(3) ("Any such rate shall be rounded to the nearest full percent . . . ."). Adding three percentage points to each of these rates as required by 26 U.S.C. § 6621(2), the applicable rates are 5% for the $2,716.60 in payments due and owing since November of 2004, 5% for the $1,769.70 in payments due and owing since December of 2004, and 6% for the $527.85 in payments due and owing since January of 2005. This results in prejudgment interest due in the amounts of $237.70, $147.48, and $50.15, respectively, when applied through the month of judgment, July of 2006.

can find nothing in the Plan that expressly permits the collection of liquidated damages, let alone the collection of liquidated damages at a rate of 5% per month.

It is true that the Letter off-handedly refers to the fact that there was a "penalty for delinquent contributions" of 5% per month in 2001. Plaintiff has not proven that this "penalty" in 2001 constitutes a Section 1132(g)(2)(C) "liquidated damages" provision binding upon Defendant in 2004 and 2005. *Cf. Int'l Painters*, 239 F. Supp. 2d at 32-33 (holding plaintiff not entitled to "late charges" under ERISA). Accordingly, the court finds Plaintiff has not proven it is entitled to $3,786.52 in liquidated damages. 29 U.S.C. § 1132(g)(2)(C).[8]

Accordingly, the court finds Plaintiff is entitled to recover "an amount equal to the . . . interest on the unpaid contributions," i.e., $435.33. 29 U.S.C. § 1132(g)(2)(C)(i).

### D. Attorney Fees & Costs

In the Memorandum, Plaintiff asks for $1,695.00 in attorney fees and $326.63 in costs. Exhibit E is Plaintiff's evidence of attorney fees. Exhibit E is a printout from Plaintiff's law firm. The printout purports to show that Plaintiff's law firm expended $1,695.00 in attorney fees and $326.63 in costs on this case.

#### *1. Attorney Fees*

The court is required to award Plaintiff a reasonable attorney fee. *See* 29 U.S.C. § 1132(g)(2)(D) (stating court "shall award . . . reasonable attorney's fees"); *see also Hewitt v. Helms*, 459 U.S. 460, 471 (1983) (remarking that the word "shall" is "language of an unmistakably mandatory character"), *overruled on other grounds by Sandin v.*

---

[8] In any event, the $3,786.52 figure clearly exceeds the 20% cap on liquidated damages found in § 1132(g)(2)(C)(ii). 29 U.S.C. § 1132(g)(2)(C)(ii); *see, e.g., Int'l Painters*, 239 F. Supp. 2d at 31 n.3 ("Liquidated damages may not be greater than 20 percent of the unpaid contributions.")

*Conner*, 515 U.S. 472 (1995). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (interpreting 42 U.S.C. § 1988). The Eighth Circuit Court of Appeals often follows this "lodestar approach" when determining the amount of attorney fees to which a successful claimant is entitled. *See, e.g., H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 259 (8th Cir. 1991). "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001)).

"[T]he fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. To meet its burden, the fee applicant must "submit evidence supporting the hours worked and rates claimed." *Id.* at 433. Inadequate documentation or imprecise billing may be a basis for a fee reduction. *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 715 (3d Cir. 1989). This is so because incomplete or imprecise billing records do not allow for meaningful review of the fee application to determine whether it includes "'excessive, redundant, or otherwise unnecessary' hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim." *H.J.*, 925 F.2d at 260 (quoting *Hensley*, 461 U.S. at 434, 437 & n.12).

The court finds the majority of the claimed fees are reasonable. Reviewing the itemized list of expenditures, Exhibit E reveals that Attorneys Robert Braun and James Kalkhoff spent a combined total of 7.1 hours on the case. The court finds the amount of time these two attorneys spent on the case is reasonable. Each attorney charged $150 per hour for their services. Attorneys Braun and Kalkhoff are experienced trial lawyers and

the rate charged is consistent with the prevailing market rate for similar services. Accordingly, the court finds that an award of $1,065.00 for attorneys fees for the work of Attorneys Braun and Kalkhoff is reasonable. 29 U.S.C. § 1132(g)(2)(D).

Exhibit E also states that Attorney Corey Lorenzen spent a total of 4.5 hours on the case. The court finds this total should be reduced to 4.2 hours. The printout was prepared before the Hearing. Although the Order scheduling the Hearing anticipated that the Hearing would last a half-hour, it lasted only twelve minutes. Accordingly, the court reduces the award by eighteen minutes or .3 hours.

Exhibit E also states that Attorney Lorenzen should be compensated at a rate of $140.00 per hour. The court notes that Mr. Lorenzen has significantly less experience practicing law than Attorneys Braun and Kalkhoff. The court finds that the prevailing market rate for similarly experienced attorneys in the area is $100.00 per hour, not $140.00 per hour. Therefore, the court shall find that an award of $420.00 for Mr. Lorenzen's services in this case is reasonable.

Accordingly, the court shall award Plaintiff $1,485.00 as a reasonable attorney fee for the services of Attorneys Braun, Kalkhoff and Lorenzen. 29 U.S.C. § 1132(g)(2)(D).

### 2. Costs

The court is required to award Plaintiff costs. *See* 29 U.S.C. § 1132(g)(2)(D) (stating court "shall award . . . the costs of the action"); *see also Hewitt*, 459 U.S. at 471 (remarking that the word "shall" is "language of an unmistakably mandatory character"). Plaintiff requests $326.63 in costs. Exhibit E shows that Plaintiff spent $326.63 on service fees, long distance phone calls and mileage. The court finds these are compensable costs. *See Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. C00-35-LRR, 2004 WL 1234130, *6 (N.D. Iowa 2004) (holding long distance phone calls and reasonable travel expenses are compensable under similarly worded fee-shifting provision in 15 U.S.C. §

15

72 (1994)); *see also id.* at *7 (holding that filing fees and fees incurred in securing witness testimony are compensable (citing 28 U.S.C. § 1920)). The court shall reduce the requested award of costs by $11.74, however, because Exhibit E states that the Linn County Sheriff refunded Plaintiff's law firm $11.74 in service fees.

Accordingly, the court shall award Plaintiff $314.89 in costs. 29 U.S.C. § 1132(g)(2)(D).

### *E. Audit Fees*

Plaintiff also requests reimbursement for $260.00 in audit fees.[9] By its terms, 29 U.S.C. § 1132(g) does not permit recovery of audit fees. Even if audit fees were recoverable, Plaintiff has provided the court with insufficient evidence such fees were expended. Exhibit D shows that Employee Fringes Audit Company billed Plaintiff $280.00 for "Dwayne Farmer Masonry." The amount of this bill does not match the requested reimbursement; moreover, "Dwayne Farmer Masonry," while similarly named, is not an identical match to Defendant's corporate name. In light of these discrepancies, the court finds there is insufficient evidence upon which to base an award.

### *IV. CONCLUSION*

**IT IS THEREFORE ORDERED THAT:**

(1) Plaintiff's Application (docket no. 6) is **GRANTED IN PART AND DENIED IN PART**;

(2) The Clerk of Court is directed to enter default judgment in favor of Plaintiff and against Defendant in the amount of $7,684.70; and

(3) The Clerk of Court is directed to close this case.

---

[9] Plaintiff does not include this figure in the "costs of suit," presumably because the audit was conducted before litigation was anticipated.

**IT IS SO ORDERED.**

**DATED** this 19th day of July, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA